IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SHYTRICE ROBINSON<br>4124 Lowe Road<br>Toledo, OH 43612 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| RYDER INTEGRATED LOGISTICS INC.<br>c/o Corporate Creations Network, Inc.<br>119 E. Court Street<br>Cincinnati, OH 45202 | ) ) ) ) ) ) | **Jury Demand Endorsed Herein** |
| Defendant. | ) | |

Plaintiff, Shytrice Robinson, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES, JURISDICTION AND VENUE

1. Shytrice Robinson is a resident of the city of Toledo, county of Lucas, state of Ohio.

2. Ryder Integrated Logistics, Inc. ("Ryder") is a foreign corporation that operates a place of business in Ohio located at 2024 East Manhattan Blvd., Toledo, OH 43608.

3. This Court had federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Parbel is alleging federal law claims under 29 U.S.C. § 2601 *et seq.*, Family and Medical Leave Act, ("FMLA"), as well as Title VII of the Civil Rights Act of 1964.

4. This Court has personal jurisdiction over Ryder because it is a for-profit corporation that is registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.



5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Robinson's Ohio Law claims because those claims derive from the same common core of operative facts and are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. All material events alleged in this Complaint occurred in Lucas County.

7. Venue is properly placed in the United States District Court for the Northern District of Ohio, Western Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which Ryder operated and where a substantial part of the events or omissions giving rise to the claim occurred.

8. More than 180 days have passed since Robinson filed her formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Agency Charge No. 22A-2020-01228.

9. On April 6, 2021, the EEOC issued and mailed a Notice of Right to Sue letter regarding Robinson's EEOC Charge of Discrimination.

10. Robinson has received a Right to Sue letter from the EEOC, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as Exhibit 1.

11. Robinson has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12. Robinson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

**FACTS**

13. Robinson is a former employee of Ryder.

14. Robinson is African-American.

15. Robinson began working at Ryder in or around August 2018.

16. Ryder employed Robinson as a driver.

17. Upon information and belief, Robinson was one of few, if not the only African American female drivers for Ryder, at least at the Toledo location.

18. After Robinson began working for Ryder, she noticed disparate treatment towards African American employees, including herself.

19. During her employment, Robinson contacted Ryder's Ethics hotline to report ongoing racial discrimination and unfair treatment against herself and other African American employees.

20. Robinson reported that a Caucasian employee at Ryder made the statement, "I see these monkeys are still here," referring to African American employees.

21. To Robinson's knowledge, none of her complaints to the Ethics hotline, nor Ryder management, were investigated.

22. To Robinson's knowledge, none of her complaints to the Ethics hotline, nor Ryder management, resulted in any employee discipline for the employees who engaged in discriminatory conduct.

23. On or around March 15, 2019, Robinson reported harassing and threatening comments by one of her coworkers, Russell Farrell.

24. Robinson felt unsafe around Farrell.

25. Robinson asked for Ryder to separate her from Farrell, including removing either her or him from working on the same accounts.

26. Robinson's request to be separated from Farrell was denied or otherwise ignored.

27. In or around April 2019, Robinson became the target of sexual harassment and assault while at work.

28. Robinson's coworker, Mike Lewis, sexually harassed Robinson while at work.

29. Lewis sexually touched Robinson while at work.

30. Lewis grabbed and/or touched Robinson's private areas between her legs.

31. Robinson rejected Lewis' advances.

32. Lewis' conduct was unwelcomed.

33. After Robinson's complaints against Farrell went ignored or otherwise unresolved, Robinson did not immediately report Lewis' conduct and hoped that by rejected Lewis' advances, he would stop.

34. After Lewis failed to stop his sexually harassing/assaulting conduct, Robinson reported his conduct in July 2019.

35. Robinson reported Lewis' conduct through the help of another coworker, Andrew Williams.

36. Ryder conducted an investigation into Robinson's sexual harassment complaints.

37. Alternatively, Ryder did not conduct an investigation into Robinson's sexual harassment complaints.

38. During any such investigation, Ryder did not separate Robinson and Lewis and instead continued to allow Lewis to work with Robinson.

39. During this period, John Blackwell, a supervisor, told Robinson that he had "known about Lewis' conduct" towards Robinson for "a while" but failed to take action or report it because Robinson had not previously reported it herself.

40. Blackwell's failure to report his knowledge of Lewis' sexually harassing conduct allowed Robinson to remain in a sexually harassing hostile work environment.

41. Later in 2019, Robinson began experiencing periodic issues with chronic back pain.

42. Robinson was qualified for FMLA leave.

43. Robinson applied for and was granted eligible FMLA leave benefits.

44. Robinson only sparingly used her FMLA benefits, intermittently, as needed.

45. Despite Robinson's marginal use of FMLA, one of her supervisors, Doug Dickie reported to human resources that Robinson was calling off and "did not have time" to use for calling off of work.

46. Thereafter, in January 2020, Luke George contacted Robinson and told her not to report to work.

47. George told Robinson that she was "under investigation."

48. Robinson contacted the Ethics hotline at Ryder and reported that she was being retaliated against for use of FMLA, as well as the prior discrimination and harassment complaints she had made during her employment.

49. Following this complaint, on January 28, 2020, Robinson was terminated.

50. Robinson was terminated due to her race.

51. Robinson was terminated in retaliation for her complaints of discrimination and sexual harassment.

52. Robinson was terminated for her use of FMLA leave.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

53. Robinson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

54. Throughout her employment, Robinson was fully competent to perform her essential job duties.

55. Ryder treated Robinson less favorably than other similarly situated employees based on her race.

56. Ryder violated Title VII by discriminating against Robinson due to her race.

57. On or about January 28, 2020, Ryder terminated Robinson without just cause.

58. Ryder terminated Robinson based on her race.

59. Ryder violated Title VII when it terminated Robinson based on her race.

60. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to Title VII, 42 U.S.C. § 2000e-2.

61. As a direct and proximate result of Ryder's conduct, Robinson has suffered and will continue to suffer damages.

## **COUNT II: RACE DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *ET SEQ.***

62. Robinson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

63. Throughout her employment, Robinson was fully competent to perform her essential job duties.

64. Ryder treated Robinson less favorably than other similarly situated employees based on her race.

65. Ryder violated R.C. § 4112.01 *et seq.* by discriminating against Robinson due to her race.

66. On or about January 28, 2020, Ryder terminated Robinson without just cause.

67. Ryder terminated Robinson based on her race.

68. Ryder violated R.C. § 4112.01 *et seq.* when they terminated Robinson based on her race.

69. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

70. As a direct and proximate result of Ryder's conduct, Robinson has suffered and will continue to suffer damages.

## COUNT III: SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT – TITLE VII

71. Robinson restates each and every paragraph of this Complaint as though it were fully restated herein.

72. Robinson was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, sexual touchings, and sexual advances.

73. Ryder created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, touchings, and sexual advances.

74. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Ryder, Robinson reported the sexual harassment to management and HR.

75. Ryder's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Title VII.

76. Ryder had knowledge of Lewis' sexual harassment and failed to take any corrective or remedial action.

77. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to Title VII, 42 U.S.C. § 2000e-2.

78. As a direct and proximate result of Ryder's conduct, Robinson has suffered and will continue to suffer damages.

## COUNT IV: SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT – R.C. § 4112.01 *ET SEQ.*

79. Robinson restates each and every paragraph of this Complaint as though it were fully restated herein.

80. Robinson was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, sexual touchings, and sexual advances.

81. Ryder created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, touchings, and sexual advances.

82. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Ryder, Robinson reported the sexual harassment to management and HR.

83. Ryder's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112.02.

84. Ryder had knowledge of Lewis' sexual harassment and failed to take any corrective or remedial action.

85. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

86. As a direct and proximate result of Ryder's conduct, Robinson has suffered and will continue to suffer damages.

## COUNT V: RETALIATION IN VIOLATION OF TITLE VII

87. Robinson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

88. As a result of the Ryder's discriminatory conduct described above, Robinson complained about the race discrimination she was experiencing.

89. Robinson complained about sexual harassment she was experiencing.

90. After Robinson engaged in protected complaints, she suffered adverse actions, including her termination.

91. Ryder's actions were retaliatory in nature based on Robinson's opposition to the unlawful discriminatory conduct, in violation of Title VII, 42 U.S.C. § 2000e-3.

92. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to Title VII, 42 U.S.C. § 2000e-3.

93. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Robinson, she suffered and will continue to suffer damages.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

94. Robinson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

95. As a result of the Ryder's discriminatory conduct described above, Robinson complained about the race discrimination she was experiencing.

96. Robinson complained about sexual harassment she was experiencing.

97. After Robinson engaged in protected complaints, she suffered adverse actions, including her termination.

98. Ryder's actions were retaliatory in nature based on Robinson's opposition to the unlawful discriminatory conduct.

99. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

100. Robinson suffered emotional distress as a result of Ryder's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

101. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Robinson, she suffered and will continue to suffer damages.

## COUNT VII: RETALIATION IN VIOLATION OF THE FMLA

102. Robinson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

103. During her employment, Robinson qualified for FMLA leave.

104. During her employment, Robinson utilized FMLA leave.

105. After Robinson utilized her qualified FMLA leave, Ryder retaliated against her.

106. Ryder retaliated against Robinson by terminating her employment.

107. Ryder willfully retaliated against Robinson in violation of 29 U.S.C. § 2615(a).

108. As a direct and proximate result of Ryder's wrongful conduct, Robinson is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Robinson demands from Ryder the following:

(a) Issue an order requiring Ryder to reinstate Robinson;

(b) An award against Defendant of compensatory and monetary damages to compensate Robinson for lost wages, liquidated damages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Robinson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

        Respectfully submitted,

        /s/ *Fred M. Bean*

        Fred M. Bean (0086756)
        David E. Byrnes (0086975)
        **THE SPITZ LAW FIRM, LLC**
        25200 Chagrin Boulevard, Suite 200
        Beachwood, OH 44122
        Phone: (216) 291-4744
        Fax:   (216) 291-5744
        Email: Fred.Bean@spitzlawfirm.com
               David.Byrnes@spitzlawfirm.com

        *Attorneys For Plaintiff Shytrice Robinson*

## **JURY DEMAND**

Plaintiff Shytrice Robinson demands a trial by jury by the maximum number of jurors permitted.

        /s/ *Fred M. Bean*

        Fred M. Bean (0086756)
        David E. Byrnes (0086975)
        **THE SPITZ LAW FIRM, LLC**